ASHLEY v. SAMUEL C. TATUM CO.

(Circuit Court of Appeals, Second Circuit.   June 6, 1911.)

No. 213.

PATENTS (§ 328*)—INVENTION—INKSTAND.
 The Ashley patent, No. 829,752, for an inkstand which is made of glass,
having a square or angular base and a substantially flat top with a cir-
cular reservoir therein, the glass being turned in to form a dome shaped
cover to the reservoir leaving an opening in the center is void for lack
of invention in view of the prior art.

Appeal from the Circuit Court of the United States for the South-
ern District of New York.

Suit in equity by Frank M. Ashley against the Samuel C. Tatum
Company.   Decree for complainant, and defendant appeals.   Re-
versed.

See, also, 181 Fed. 840, and 186 Fed. 339.

Wood & Wood, for appellant.

A. T. Scharps and Frank M. Ashley, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge.   The patent is No. 829,752, issued to
complainant January 12, 1906; the design patent was issued August
8, 1905.   The specification of No. 829,752 states that the invention
relates particularly to that type of inkstands which is pressed in iron
molds and has a base portion of a different form from the ink-well
therein, and particularly to a square inkstand having a circular well
formed therein and made of pressed glass.   "The square glass ink-
stands made of pressed glass are generally formed by an iron mold
and a round plunger is forced into the mold when the glass is in a
molten state, and as the glass sets or crystallizes the plunger is with-
drawn and the glass turned out of the mold, leaving a base square
in cross section and a circular opening usually beginning flush with
the surface of the square, as indicated by line $xx$ on Figure 1 of the
drawings."

The drawings are here reproduced:

The specifications proceed:

"Therefore when the bases are used for the automatic type of inkstand
which use floats of hard rubber, and are of a much smaller diameter than the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

opening of the well proper, it is necessary to use an extra top disc of hard' rubber as a cover for the reservoir and to support the float and other parts of the automatic combination. By my invention I obviate the necessity of using this extra disc cover and have conceived a method of construction, as well as a new construction which makes a far better, cheaper and handsomer and more durable stand of this form than has heretofore been constructed.

"The object of my invention is to provide an inkstand base of square or irregular cross-section having a circular reservoir and a turned-in glass top, or cover for the reservoir formed integral with the base and turned in toward' the center of the stand at a point directly above the square of the base."

## Referring to the drawings the patentee states that:

"Fig. 1 is a vertical sectional view showing the shape of the glass as it comes from the mold, and Fig. 2 is a vertical sectional view showing the stand with the top turned in. A indicates the square base, B the top ring as it is first formed and C shows the stand after the ring B has been turned in while in a molten condition."

## The claims are as follows:

"(1) An inkstand made in a single piece, having a body angular in cross-section and provided with a substantially flat top, a circular reservoir therein, and a turned-in portion directly above the top forming a low dome, substantially as shown and described.

"(2) An inkstand having a reservoir body with thickened walls and a dome-shaped cover therefor made integral therewith and of less diameter than the body, and having its wall of less thickness than the body portion.

"(3) An inkstand having a reservoir body with thickened walls and a cover therefor made integral therewith and of less diameter than the body, and having its wall of less thickness than the body portion, and formed above the body portion and provided with an opening, substantially as described."

The patentee was not the first to turn in the projecting ring formed on the top of a molded glass inkstand so that it would partially cover the reservoir and would reach in far enough to support an automatic float. We understand that he undertakes to differentiate the prior art by the suggestion that "the turned-in portion of the earlier stands was at a considerable distance above the thickened cylindrical walls." We cannot find in the lower dome of his patent combined with a square base any useful function, although the appearance of the completed structure may be more artistic and attractive; but that element would be the subject of a design patent.

From the account which he gives of his invention it appears that when he first ordered an inkstand of the glassmakers they insisted that it could not be done. The process is first to form the base with an upstanding ring; then after it has cooled the ring portion is heated to a degree which will permit the ring to be spun inward toward the center; the glass being in a sufficiently heated condition at its top end to permit the spinning of this collar inward, while maintaining the body portion in a comparatively cooler condition, so that in holding the same, the holding implement will not deform the body portion. This method was in use for spinning-in the high collars of the prior art. The glassmakers insisted that it could not be employed with Ashley's short-necked collar because the heated portion of the collar was so close to the square top of the square base that the dome portion would crack loose from the base portion in cooling. The glassmakers turned out to be correct, for this very thing happened

in the first attempts to make these stands. The patentee thereupon devised a plan to meet this difficulty. He had the molds altered so as to form a fillet at the base of the collar where it joined the top of the reservoir. He also supplemented the old process, after the top had been turned in, by "immediately thereafter placing the entire stand in an annealing oven and re-heating the same to a red heat to remove the stresses set up in the pressing operation, and allowing the stand to gradually cool, so that the lower portion would become cold about as fast quickly as the cover portion." These modifications of the old process remedied the difficulty and made it possible to construct ink-stands having the square base and low dome of the patent without cracking. It may be that the patentee invented a novel and useful process for making glass inkstands, but his specification did not disclose it to the world, and his claims cannot thereby be sustained. Indeed the specification states that "those skilled in the art will have no difficulty in making the stand from the drawings." He explains this by stating that before he filed his application he had imparted to the molders who were making stands for him all the necessary steps of his improved process.

We are satisfied that the inkstand itself as a completed structure exhibits no invention, and for that reason the patent is invalid.

Decree reversed and cause remanded, with instructions to dismiss the bill.